Paid

44

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                    Plaintiff,

Case: 2:23−cv−11232
Assigned To : Hood, Denise Page
Referral Judge: Altman, Kimberly G.
Assign. Date : 5/25/2023
Description: CMP DOBRONSKI V.
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC ET AL (NA)

v.

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC,**
a Tennessee limited liability company,

**MARC J. BERN & PARTNERS LLP,**
a New York limited liability partnership,

**BIRGER KRISTIAN W. RASMUSSEN III,**
a/k/a **KRISTIAN RASMUSSEN,**
an individual, and

**PATRICK MATTHEW WALLACE,**
an individual,

                    Defendants.

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common

Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

## **Parties**

2.  Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of and has a place of business in Orange County, Florida, has a place of business and residence in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3. Upon information and belief, Defendant MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC ("Milberg"), is a limited liability company organized and existing under the laws of the State of Tennessee, with a principal office located at 800 South Gay Street, Suite 1100, Knoxville, Tennessee 37929-9726, and is qualified to transact business in the State of Michigan, with a registered office located at 2222 West Grand River Avenue, Suite A, Okemos, Michigan 48864-1604.

4.  Upon information and belief, Defendant MARC J. BERN & PARTNERS LLP ("Bern"), is a limited liability partnership organized and existing under the laws of the State of New York, with a principal office address located at 60 East 42nd Street, Suite 950, New York, New York 10165-0950.

5.  Upon information and belief, Defendant Birger Kristian W. Rasmussen III ("Rasmussen"), is also known as Kristian Rasmussen, is an individual, is of the age

2

of majority, is not in the military service, and resides at 6917 Collins Avenue, Apartment 1505, Miami Beach, Florida 33141-3298.

6.      Upon information and belief, Defendant Patrick Matthew Wallace ("Wallace"), is an individual, is of the age of majority, is not in the military service, and resides at 10105 Grafton Road, Raleigh, North Carolina 27615-1142.

## Jurisdiction

7.      This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

8.      This Court has limited personal jurisdiction over Defendants Milberg and Bern, pursuant to M.C.L. § 600.715, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

9.      This Court has limited personal jurisdiction over Defendants Rasmussen and Wallace, pursuant to M.C.L. § 600.705, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

10.      This Court has limited personal jurisdiction over Defendants Milberg and

3

Bern, pursuant to M.C.L. § 600.715, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

## Venue

11.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## Preliminary Statement

12.   As the Supreme Court recently explained, "Americans passionately disagree amount many things.  But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

13. The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

14. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robocalls" by enacting the TCPA.

15.    According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC."

16.    In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

17. According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

18.  In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source:   www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-

scams-over-the-past-year.html ].

19.   Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

20.   As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

## Telephone Consumer Protection Act

21.   In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and invasion of privacy to consumers specifically, but were also a threat to interstate commence generally. *See* S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

22.   The TCPA imposes restrictions on the use of automated telephone equipment.  47 U.S.C. § 227(b)(1).

23.   Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement these requirements.

6

24. The TCPA implementing regulations, at 47 C.F.R. 64.1200(a), promulgate

in relevant part:

> "No person or entity may: ...
>
> (7) Abandon more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30–day period for a single calling campaign. If a single calling campaign exceeds a 30–day period, the abandonment rate shall be calculated separately for each successive 30–day period or portion thereof that such calling campaign continues. A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting.
>
> (i) Whenever a live sales representative is not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, the telemarketer or the seller must provide:
>
> (A) A prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and states the name of the business, entity, or individual on whose behalf the call was placed, and a telephone number for such business, entity, or individual that permits the called person to make a do-not-call request during regular business hours for the duration of the telemarketing campaign; provided, that, such telephone number may not be a 900 number or any other number for which charges exceed local or long distance transmission charges, and
>
> (B) An automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism. When the called person elects to

opt-out using such mechanism, the mechanism must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call...

(iii) The seller or telemarketer must maintain records establishing compliance with paragraph (a)(7) of this section...."

25. The TCPA, at 47 U.S.C. 227(b)(3), provides for a private right of action,

as follows:

"Private right of action

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

(A) an action based on a **violation of this subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

26. Congress has also delegated authority under the TCPA to the FCC to

implement regulations to protect residential telephone subscribers' provact rights to

8

avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(1).

27. The TCPA regulations, at 47 C.F.R. § 64.1200(c), promulgate in relevant part:

> "No person or entity shall initiate any telephone solicitation to: ...
>
> "(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

28. The TCPA regulations, at 47 C.F.R. 64.1200(d), further promulgate:

> "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes

(or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. . . ."

29. The TCPA regulations at, 47 C.F.R. § 64.1601(e), additionally promulgate

in relevant part:

"Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

30. The TCPA, at 47 U.S.C. § 227(c)(5), provides for a private right of action, as follows:

"Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each**

**such violation**, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

### Michigan Telemarketing Laws

31. The Michigan Legislature, like many other state legislatures, has enacted their own laws to combat abusive telemarketing.

32. Congress has expressly declared that these state laws are not federally preempted. 47 U.S.C. § 227(f)(1).

33. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

"(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following: ...

(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...

12

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

34. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

"... A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

35. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made.

(2) The person answering the telephone number required under subsection (1) shall provide a residential telephone subscriber calling the telephone number with information describing the organization or other person on whose behalf the telephone solicitation was made to the residential telephone subscriber and describing the telephone solicitation.

(3) A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a

telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber."

36. The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

"(1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

## **FACTUAL BACKGROUND**

37. Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have

been issued against Plaintiff for alleged drug trafficking and money laundering activities.

38. Plaintiff's residential telephone number is 734-***-1000.

39. Plaintiff's residential telephone number 734-***-1000 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least May 27, 2022 and at all times subsequent thereto.

40. By listing his residential telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

41. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015).

42. Plaintiff is the subscriber to and a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this

complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

43. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

44. At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

45. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

46. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

47. At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

48. At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with any of the Defendants.

49. The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at \*49, ¶ 142 (June 26, 2003)[Emphasis as in original.]

50. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

51. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and

understood to exist from the conduct itself. Whenever two or more persons commit

tortious acts in concert, each become subject to liability for the acts of the others, as

well as for his own acts.

52.  The liability of coconspirators to civil damages is joint and several. All

those who, in pursuance of a common plan to commit a tortious act actively take part

in it and further it by cooperation or request, or who lend aid or encouragement to the

wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable

with him.

53. For each and every call alleged herein initiated to Plaintiff's telephone line,

Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right

of seclusion.

54. For each and every call alleged herein initiated to Plaintiff's telephone line,

Plaintiff suffered the injury of the occupation of the telephone line by unwelcome

calls, making the phone unavailable for legitimate callers or outgoing calls, including

emergency calls, when the telephone line was seized by Defendant's calls.

55. For each and every call alleged herein initiated to Plaintiff's telephone line,

Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff.

For calls that were answered, Plaintiff had to go to the unnecessary trouble of

answering them.  Even for unanswered calls, Plaintiff had to deal with missed call

notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

56. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

57. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## The Concert of Action

58. An estimated one million people who were stationed at Camp Lejeune in North Carolina from 1953 to 1987 may have been exposed to contaminated drinking water that can cause cancer, birth defects, miscarriages, and other serious health problems and are now eligible to be part of the Camp Lejeune water contamination lawsuit and entitled to compensation for any injuries, illnesses, diseases, and health conditions allegedly caused by the contaminated water.

59. Defendants Milberg and Bern are law firms which engage in, *inter alia*,

representing clients in mass tort litigation cases and, in particular, the Camp Lejeune water contamination lawsuit.

60. Defendants Rasmussen and Wallace are attorneys-at-law in the employ of Defendant Milberg who seek to represent clients in the Camp Lejeune water contamination lawsuit.

61. Defendants are engaged in soliciting members of the public to be represented by Defendants in filing claims and lawsuits and other matters arising out of and suffered by individuals related to Camp Lejeune or other military toxic exposure.

62. In general, lawyers are prohibited from soliciting clients in person, on the telephone, and through real-time electronic communication, unless the person the are talk to is: a lawyer, a family member, close friend, or prior business associate; or someone who routinely uses similar legal services for their business. American Bar Association ("ABA") Model Rules Prof. Conduct 7.3.

63. Defendants utilize third-party telemarketers to initiate telephone calls *en masse* using automated telephone dialing platforms to solicit consumers to utilize Defendants' legal services.

64. Defendants approved the contracts with and pay the third-party telemarketers to engage in the illegal telephone solicitations.

65. The third-party telemarketers will call and query consumers to determine if they meet the pre-qualification criteria set by Defendants to be a suitable plaintiff in the Camp Lejeune water contamination cases.

66. If, at any point in the telephone solicitation, the called consumer fails to meet the designated pre-qualification criteria, the third-party telemarketer will immediately terminate the call and move on to initiating another call to another consumer.

67. If the called consumer meets the pre-qualification criteria, the third-party telemarkter will then transfer the call to a "verifier" to make a second review of the pre-qualification criteria with the consumer.

68. Once the consumer has been pre-qualified and verified, the consumer is informed that an "attorney's agent" will be coming to the consumer's residence to further discuss legal representation of the consumer.

69. A courier (usually, a mobile notary public) is then promptly engaged, transmitted a representation agreement, and dispatched to the residence of the consumer to have the consumer sign the representation agreement.

70. It is only after the courier arrives at the consumer's residence is the consumer able to determine the names of the attorneys or law firm.

71. Defendants instruct their third-party telemarketers to identify with generic

references to "Camp Lejeune" and not identify with any identifiable business name in order to conceal their true identity and evade liability for, *inter alia*, TCPA violations.

72. If a consumer seeks better identification from the third-party telemarketer, the telemarketer will avoid providing any information or will hang up. This is done because the Defendants and their third-party telemarketers all know that the entire concert of action which they are engaged in is illegal.

73. To further conceal identities, the third-party telemarketer will falsify or "spoof" their caller identification number information such that the called party is unable to call the third-party telemarketer back.

74. Defendants willfully and knowingly violate the TCPA because doing so benefits them financially when they generate new clients through illegal telemarketing.

75. Defendants know that the telephone solicitations being made on their behalf soliciting their legal services violate the TCPA.

76. Defendant Milberg is fully cognizant of the illegal nature of the telephone solicitations and the illegal activities of their third-party telemarketers as Defendant Milberg has been previously haled into federal courts on at least two occasions for nearly identical illegal conduct in violation of the TCPA and state consumer

protection laws as alleged in this complaint. Despite being haled into court for TCPA violations, Defendant Milberg still continues with its illegal telephone solicitations.

77. Defendants personally authorized, directed, had control over, and participated in the telephone solicitation activities by accepting the representation agreements which are produced as a result.

78. Defendants derive substantial financial benefits the telephone solicitations and the resultant representation agreements.

79. Because telemarketers engaged in illegal telephone solicitations utilize deceptive practices designed to conceal their actual identities, Plaintiff has had to resort to various investigative techniques to identify the sources of the telemarketing calls being received.

80. One investigative technique utilized by Plaintiff is termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name. If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

81. As discovery progresses in this case and Plaintiff is able to learn the identity or identities of the third-party telemarketers centers that Defendants have utilized to initiate the telephone solicitations, Plaintiff will seek to amend this

complaint to add the third-party telemarketers as additional named defendants.

82.  Also as discovery progresses in this case, Plaintiff anticipates learning of additional telephone solicitation calls for which Defendants or Defendants' third-party telemarketers are responsible, at which time Plaintiff will seek to amend this complaint to supplement the damages claims.

<u>Call 1</u>

83.  On March 31, 2023, at approximately 2:18 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-1000.

84.  The caller identification number displayed was 734-846-5514.

85.  Upon answering the telephone call, Plaintiff observed a 4-5 second delay after saying "hello", followed by a "boink" and clicking sound, and then a live telemarketer came onto the line and identified himself as "Alex calling on behalf of Camp Lejeune."

86.  Alex began attempting to ask pre-qualification questions of Plaintiff.

87.  In response to an answer, Alex stated that Plaintiff did not qualify.

88.  Plaintiff told Alex that Plaintiff's telephone number was on the national do-not-call list.

89.  Alex stated "you mother fucker" and hung up.

90. After the call terminated, Plaintiff dialed the caller identification number displayed (734-846-5514) and found that the telephone number belonged to a private citizen who knew nothing about Camp Lejeune.

<u>Call 2</u>

91. On April 26, 2023, at approximately 9:12 A.M., Defendants or Defendants' third-party telemarketer initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-1000.

92. The caller identification number displayed was 734-753-4165.

93. Upon answering the telephone call, Plaintiff observed a 4-5 second delay after saying "hello", followed by a "boink" and clicking sound, and then a live telemarketer came onto the line and identified himself as "John calling on behalf of Camp Lejeune."

94. "John" began attempting to ask pre-qualification questions of Plaintiff.

95. Suddenly, "John" exclaimed "oh!" and hung up.

96. After the call terminated, Plaintiff dialed the caller identification number displayed (734-753-4165) and the telephone number dialed simply rang and was not answered.

<u>Call 3</u>

97. On May 3, 2023, at approximatley 10:15 A.M., Defendants or Defendants'

third-party telemarketer initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-1000.

98.  The caller identification number displayed was 734-926-9979.

99.  Upon answering the telephone call, Plaintiff observed a 4-5 second delay after saying "hello", followed by a "boink" and clicking sound, and then a live telemarketer came onto the line and identified himself as "Ricky calling on behalf of Camp Lejeune."

100.  "Ricky" began attempting to ask pre-qualification questions of Plaintiff.

101.  After asking the pre-qualification questions, Ricky then explained that he was transferring the call to "a licensed agent".

102.  Plaintiff then heard a "boink" sound and then a recorded message stating, "This call cannot be completed."  This occurred two times.

103.  Ricky then stated, "Sir, when is the best time to call you back?" and immediately hung up without awaiting a response.

104.  After the call terminated, Plaintiff dialed the caller identification number displayed (734-926-9979) and received a reorder signal.

<u>Call 4</u>

105.  On May 4, 2023, at approximately 2:59 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone solicitation call to Plaintiff's residential

telephone number 734-***-1000.

106. The caller identification number displayed was 734-869-1668.

107. Upon answering the telephone call, Plaintiff observed a 4-5 second delay after saying "hello", followed by a "boink" and clicking sound, and then a live telemarketer came onto the line and identified himself as "Ricky calling on behalf of Camp Lejeune."

108. As soon as Ricky introduced himself, the call suddenly terminated.

109. After the call terminated, Plaintiff dialed the caller identification number displayed (734-869-1668), which call was answered by what would appear to be a facsimile machine.

<u>Call 5</u>

110. On May 4, 2023, at approximately 5:51 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-1000.

111. The caller identification number displayed was 734-586-6271.

112. Upon answering the telephone call, Plaintiff observed a 4-5 second delay after saying "hello", followed by a "boink" and clicking sound, and then a live telemarketer came onto the line and identified himself as "Alex calling on behalf of Camp Lejeune."

113. "Alex" began attempting to ask pre-qualification questions of Plaintiff.

114. Alex then stated that he was going to transfer the call and asked "please stay on the line."

115. Plaintiff was then transferred to recorded piano music and left on hold for over 6 minutes, at which time Plaintiff hung up.

116. After the call terminated, Plaintiff dialed the caller identification number displayed (734-586-6271) and the telephone number dialed simply rang and was not answered.

<u>Call 6</u>

117.    On May 5, 2023, at approximately 10:16 A.M., Defendants or Defendants' third-party telemarketer initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-1000.

118.  The caller identification number displayed was 734-926-1637.

119.  Upon answering the telephone call, Plaintiff observed a 4-5 second delay after saying "hello", followed by a "boink" and clicking sound, and then a live telemarketer came onto the line and identified himself as "Martin Peterson calling on behalf of Camp Lejeune."

120.  Peterson began asking pre-qualification questions of Plaintiff.

121.  Peterson then stated that he was transferring the call to his supervisor.

122.   Another telemarketer came on the line and identified himself as "Mark Antonios" and repeated the pre-qualification questions.

123.   Antonios stated that he was transferring the call to his "licensed agent."

124.   Plaintiff heard a "boink" sound and then a recorded message stating, "This call cannot be completed."

125.   Antonios stated that his licensed agents were all busy and that he would call back and hung up.

126. After the call terminated, Plaintiff dialed the caller identification number displayed (734-926-1637) and received a recorded message stating, "The number you have reached is no longer in service."

<u>Call 7</u>

127.   On May 18, 2023, at approximately 11:47 A.M., Defendants or Defendants' third-party telemarketer initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-1000.

128.   The caller identification number displayed was 734-540-7840 and the caller identification name displayed was "V518114721000006".

129. Upon answering the telephone call, Plaintiff observed a 4-5 second delay after saying "hello", followed by a "boink" and clicking sound, and then a live telemarketer came onto the line and identified himself as "Jack calling on behalf of

Camp Lejeune."

130. "Jack" began attempting to ask pre-qualification questions of Plaintiff.

131. Jack then stated that he was transferring the call to one of his specialists in my local area and that "she" would take over the call.

132. Plaintiff then heard a "boink" sound and then ringing and then the call was answered by a female identifying herself as "Romana Rey with the Camp Lejeune Intake Center."

133. Rey asked detailed qualifying questions of Plaintiff, to which Plaintiff engaged in a "canary trap" and provided controlled responses, including the *faux* name of Robert Krause, a false date of birth, and a false address.

134. It is significant to note that, at no time during this telephone call, did Plaintiff provide his telephone number to the caller.

135. After the interview, Rey stated that her local associate would be coming to my house that day to provide me with papers so that their lawyers could represent me. She scheduled an appointment for 3:00 P.M.

136. Despite Plaintiff's efforts to get better identifying information from Rey about the law firm or her company, Rey dodged all questions.

137. After the call terminated, Plaintiff dialed the caller identification number displayed (734-540-7840) and the call was answered by a recording stating that "the

number is longer in service" and terminated.

138.  On May 18, 2023, at approximately 3:00 P.M., Plaintiff was contacted by and met with a courier that had been sent by Defendants.

139.  The courier identified himself as Jan Bond, a "mobile notary public."

140.  Bond presented an 18-page document to Plaintiff and sought Plaintiff's signature.  The document was pre-filled with the "canary trap" information that Plaintiff had provided to Rey during Call 7, *supra*, to wit: the *faux* name, date of birth, and address.

141.  Bond informed Plaintiff that Bern was now Plaintiff's legal representative for the Camp Lejeune water case and that Plaintiff should not sign with any other attorneys.

142.  Plaintiff pointed out to Bond that the 18-page document was a contract with Milberg, not Bern; to which Bond stated that he was only doing what he was told and showed Plaintiff the written instructions that Bond had received from Defendants.

143.  The contract expressly provided that Plaintiff was "designat[ing] and authoriz[ing] Kristian Rasmussen and Patrick Wallace, associated with the law office of Milberg Coleman Bryson Phillips Grossman PLLC to represent me..."

144.  Plaintiff informed Bond that Plaintiff would need a day or more to read

through the 18-page document and that Plaintiff would contact Bond if and when Plaintiff was ready to sign the document.

145.  Plaintiff and Bond amicably departed the meeting.

Call 8

146.   On May 18, 2023, at approximately 4:56 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-1000.

147.  The caller identification number displayed was 615-667-9272.

148.  Upon answering the telephone call, a live telemarketer came onto the line and identified herself as "Romana Richard from the Camp Lejeune National Intake Center."

149.  Romana asked to speak with the *faux* name that Plaintiff had provided during Call 8, *supra*.

150.  Romana stated that she was following up to make sure that Plaintiff had met with Defendants' courier and signed the document.

151.  Plaintiff informed Romana that Plaintiff was reviewing the documents and would be in contact with the courier in the next day or so.

152. Plaintiff sought clarification of Romana's name.  Romana now stated that her name was Romana Rey.

153.  Plaintiff asked Romana for a telephone number to call her back to which she provided as 615-471-8005.

154.  Romana then hesitated and said that the telephone number may be wrong and placed Plaintiff on hold for over a minute.

155.  When Romana came back onto the line, she said that her supervisor would be calling Plaintiff and for Plaintiff to "hang up right away" so that the supervisor can call.

156.  After Plaintiff hung up, Plaintiff did not receive the promised return call.

157.  After the call terminated, Plaintiff dialed the caller identification number displayed (516-667-9272) and the call was answered by recording stating "Your call is very important to us, please hold the line" followed by recorded piano music. After 5 minutes of remaining on hold, Plaintiff terminated the call.

158.  After the call terminated, Plaintiff dialed the telephone number which Romana had provided (615-471-8005) which call was answered by a recording stating "We are sorry, the toll free number you have dialed in not available from your calling area."

<u>Subsequent Investigation</u>

159.  On May 22, 2023, at approximately 10:11 A.M. Plaintiff continued his investigation by again calling telephone number 615-667-9272.   The call was

answered by a female who identified herself as "Emma from the Camp Lejeune National Intake Center."

160. Plaintiff made demand to Emma to be provided a copy of their written do not call policy and Emma attempted to dodge the question, stating that the supervisor - named Juan - would call Plaintiff back. Plaintiff received no call back.

161. On May 22, 2023, at 10:50 A.M., Plaintiff again called telephone number 615-667-9272 and now received a recorded message stating that "The number you have dialed is not in service. Please check the number and dial again. Goodbye."

162. On May 22, 2023, at 10:52 A.M., Plaintiff utilized a different telephone line to call telephone number 615-667-9272 and, this call was answered by the same Emma that Plaintiff had spoken to approximately 40 minutes earlier. Plaintiff asked to speak with "Juan" and was told by Emma that Juan would call back later and then immediately hung up.

<u>Additional Calls</u>

163. Plaintiff has reason to believe and does believe that there are additional calls which Defendants or Defendants' third-party telemarketer initiated to Plaintiff's residential telephone number which calls Plaintiff answered by the caller immediately hung up on Plaintiff which calls are known to Defendants or Defendants' third-party telemarketer and which will be identified during discovery. After discovery, Plaintiff

intends to seek leave to file an amended complaint to seek damages for the additional calls which are identified.

## COUNT I
## VIOLATION OF THE TCPA - ABANDONED CALL

172.   Plaintiff incorporates the allegations of paragraphs 1 through 171, *supra.*

173.   Each of Calls 1 through 7, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone line and a live sales representative was not available to speak with the person answering the call within two (2) seconds after the called person's completed greeting.

174.   The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - DO NOT CALL

175.   Plaintiff incorporates the allegations of paragraphs 1 through 171, *supra.*

176.   Each of Calls 1 through 8, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is

maintained by the Federal Government.

177.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT III
## VIOLATION OF THE TCPA - FALSE IDENTITY

178.  Plaintiff incorporates the allegations of paragraphs 1 through 171, *supra*.

179.  Each of Calls 1 through 8, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(3), as Defendants or Defendants' agent entity making the call for telemarketing purposes did provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

180.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## VIOLATION OF THE TCPA - SPOOFED CALLER ID

181.  Plaintiff incorporates the allegations of paragraphs 1 through 171, *supra*.

182.  Each of the Calls 1 through 8, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information

36

displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

183. The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT V
## VIOLATION OF THE MTCCCA

184. Plaintiff incorporates the allegations of paragraphs 1 through 171, supra.

185. Each of the Calls 1 through 8, *supra*, were in violation of the MTCCCA, specifically M.C.L. § 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## COUNT VI
## VIOLATION OF THE MHSSA

186. Plaintiff incorporates the allegations of paragraphs 1 through 171, *supra.*

187. Each of Calls 1 through 8, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L.

445.111b(1), as the person making the telephone solicitation did not state his or her name and the full name of the organization or other person on whose behalf the call was initiated; and/or M.C.L. 445.111b(3), as the telephone solicitor intentionally blocked or otherwise interfered with the caller identification function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.

### PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.   Damages:

  i.   Damages for violations of the TCPA alleged:

| Count | Violations |
|---|---|
| I | 7 |
| II | 8 |
| III | 8 |
| IV | 8 |

A total of 31 violations at $500 per violation for damages of $15,500.00, which amount shall be trebled because the violations were

willful and/or knowing, for total damages of $46,500.00.

ii.   Damages for violations of the MTCCCA alleged at Count V: 8 violations at $1,000 per violation, for damages of $8,000.00.

iii.   Damages for violations of the MHSSA alleged at Count VI: 8 violations at $250 per violation, for damages of $2,000.00.

The cumulative total amount of damages claimed in this action is $56,500.00,and in the event of default judgment is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's residential telephone and cellular telephone lines.

D.  Interest accruing from the date of filing until paid at the statutory rate; and,

E.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: May 22, 2023

_____
Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

40

**MARK W. DOBRONSKI**
POST OFFICE BOX 85547
WESTLAND, MICHIGAN 48185-0547
(734) 330-9671
markdobronski@yahoo.com

May 22, 2023

United States District Court
Attn: Clerk's Office
231 West Lafayette Boulevard, 5th Floor
Detroit, Michigan 48226-2700

      Re:    NEW FILING
              Mark W. Dobronski v. Milberg Coleman Bryson Phillips Grossman, PLLC, *et al.*

Dear Sir or Madam:

      Enclosed please find:

- Check number 5241, in the amount of $402.00, representing the filing fee required for the above-case;

- Civil Cover Sheet

- Complaint; and,

- Four (4) Summonses

      Please file the complaint in your usual course and return signed Summonses to the attention of the undersigned.

      Thank you for your attention to this matter.

                        Very truly yours,

                        Mark W. Dobronski

MWD/hp

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**(b)** County of Residence of First Listed Plaintiff    ORANGE, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

### DEFENDANTS

MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC;
MARC J. BERN & PARTNERS LLP;
BIRGER KRISTIAN W. RASMUSSEN III; PATRICK MATTHEW WALLACE

County of Residence of First Listed Defendant    KNOX, TN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation -
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227

Brief description of cause:
ILLEGAL TELEMARKETING CALLS

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
    UNDER RULE 23, F.R.Cv.P.

DEMAND $ 56,500.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
May 22, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?      ☐ Yes

                                                                                   ■ No

    If yes, give the following information:

    Court: _____

    Case No.: _____

    Judge: _____


2.        Other than stated above, are there any pending or previously
              discontinued or dismissed companion cases in this or any other  ☐ Yes
              court, including state court? (Companion cases are matters in which  ■ No
              it appears substantially similar evidence will be offered or the same
              or related parties are present and the cases arise out of the same
              transaction or occurrence.)

    If yes, give the following information:

    Court: _____

    Case No.: _____

    Judge: _____


Notes :



This package is not for resale. EP14F © USPS 2022. All rights reserved.

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

UNITED STATES
POSTAL SERVICE ®

**P** PRIORITY MAIL®

Retail

US POSTAGE PAID

**$9.65**

Origin: 48130
05/22/23
2525100130-09

0 Lb 10.70 Oz

RDC 22

C052

EXPECTED DELIVERY DAY: 05/24/23

SHIP
TO:
231 W LAFAYETTE BLVD
FL 5TH
DETROIT MI 48226-2277

USPS TRACKING® #

9505 5123 0488 3143 0509 29

USPS.COM/PICKUP

FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

FLAT RATE ENVE
ONE RATE ■ ANY WEIGHT

TRACKED ■ INSUF

- Expected delivery date specified for
- Domestic shipments include $100 of
- USPS Tracking® service included for
- Limited international insurance.**
- When used internationally, a custom

*Insurance does not cover certain items. For de
Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usp

EP14F July 2022
OD: 12 1/2 x 9 1/2

PS00000100014

This package is made from post-consumer waste. Please recycle - again.